```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT BECKLEY
```

**DARREN WINEBRENNER,**

    **Plaintiff,**

**v.**                                              **CIVIL ACTION NO. 5:04-0376**

**UNITED STATES OF AMERICA,**

    **Defendant.**

## REVISED MEMORANDUM OPINION AND ORDER

Before the court is the defendant's motion for summary judgment. For the reasons detailed in this opinion and order, defendant's motion is GRANTED.

### I. Introduction

The plaintiff filed this action on April 19, 2004, seeking damages for an injury sustained while swimming in Lake Sherwood at Monongahela National Forest. The plaintiff alleges that he was injured on June 20, 2002, by the "reckless, careless, and negligent placement of concrete metal anchors which protruded above the floor of the public swimming area of Lake Sherwood." See Complaint at 2. The defendant denies the allegations and asserts that West Virginia's Recreational Use Statute, W. Va. Code Ann. § 19-25-1, et seq., shields it from liability and that the plaintiff cannot demonstrate proximate cause.[1] See Defendant's Motion for Summary Judgment (Doc. No. 32).

---

[1] Because this case is disposed of under West Virginia's Recreational Use Statute's immunity provision, this court does not reach the motion for summary judgment on the merits.

On June 20, 2002, the plaintiff and several members of his family drove to Lake Sherwood to enjoy a day of swimming at the park. See Plaintiff's Memorandum in Opposition to Summary Judgment (Doc. No. 37) at 3. Upon arriving at the park, the plaintiff was charged a $3.00 fee for the car he was driving. Id. at 14. After parking, the plaintiff and his family members proceeded to wade into the lake to the left of the designated "kiddie" swimming area. Id. at 4.[2] The plaintiff returned to the shore to drop off his mother's watch and his ring. Deposition of Darren Winebrenner at 16. The plaintiff then proceeded to reenter the water to the left of the kiddie swimming area. Id. at 16-17. After entering a short distance into the lake, the plaintiff felt pain in his lower right leg after hitting his foot on something and fell into the water. Doc. No. 37 at 4-5. The plaintiff required medical treatment for his injuries. Id. at 6.

## II. Standard for Summary Judgment

Turning to the issue of summary judgment, Rule 56 of the Federal Rules of Civil Procedure provides that

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

[2] The kiddie swimming pool is an area of the lake that is roped off by floating buoys attached to sunken concrete anchors. It is upon these anchors, that the plaintiff asserts he was injured.

> material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56 (2003). The moving party has the burden of establishing that there is no genuine issue as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met this burden, the burden then shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 250-251. Finally, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### III.  Analysis

The United States is immune from suit unless it gives consent to be sued. <u>United States v. Sherwood</u>, 312 U.S. 584, 586-87 (1941). The Federal Tort Claims Act ("FTCA") provides a limited waiver of sovereign immunity, stating "The United States

shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances. . . ." See 28 U.S.C. § 2674.  West Virginia has a recreational use statute ("RUS") which provides limited immunity to persons who open their land for recreational purposes.  See W. Va. Code Ann. § 19-25-4.  That statute, in conjunction with the FTCA, has been held to shield the United States from liability to the same extent as a private individual.  See Cox v. United States, 827 F. Supp. 378, 383 (N.D.W.V. 1992).  The United States argues that it is protected by the RUS under the facts of this case.  See Doc. No. 32 at 2.  Plaintiff Winebrenner asserts that one or both of the exceptions to the statute's immunity provision applies in this matter.  See Doc. No, 37 at 11.

    West Virginia's statute provides in part:

> [Subject to enumerated exceptions], an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational . . . purposes, or to give any warning of a dangerous or hazardous condition, use, structure or activity on such premises to persons entering for such purposes.
>    . . . [A]n owner of land who either directly or indirectly invites or permits without charge [defined in the act], any person to use such property for recreational . . . purposes does not thereby: (a) extend any assurance that the premises are safe for any purpose; or (b) confer upon such persons the legal status of an invitee or licensee to whom a duty of care is owed; or (c) assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons.

See W. Va. Code Ann. § 19-25-2.  The act provides two exceptions to its general exclusion for liability: (1) "For deliberate, willful, or malicious infliction of injury to persons or

property; or (b) for injury suffered in any case where the owner of land charges the person or persons who enter or go on the land." See W. Va. Code Ann. § 19-25-4.  The statute defines charge as "the amount of money asked in return for an invitation to enter or go upon the land." See W. Va. Code Ann. § 19-25-5. The plaintiff argues that both exceptions are applicable here. This court disagrees.

### A. Charge

It is undisputed that the plaintiff and his family paid a $3.00 fee that was assessed upon each car that entered the park. See Doc. No. 37 at 14.  The plaintiff argues that this fee equates to a "charge" under West Virginia's RUS. Id. at 14-15. The United States argues that the fee is merely a parking charge and is not the type of entrance fee contemplated by the statute. See Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. No. 33) at 15-16.

The court finds that the $3.00 fee is a parking fee and not a general entrance fee.  There is deposition testimony in this case that the $3.00 fee was levied per car and not per passenger in the car.  See Deposition of Rondi Fischer at 29; Deposition of Darren Winebrenner at 12.  There is also testimony that an individual who entered the park on foot or on bicycle did not pay the $3.00 fee.  See Deposition of Rondi Fischer at 29.  Those who enter on foot or bicycle are entitled to the same use of the park as those who arrive by car and pay the $3.00 parking fee.  Id. at

5

33.  The plaintiff implies that because of the distance of the park from a main road, the parking fee was a de facto entrance fee.  See Doc. No. 37 at 16.  Plaintiff's argument does not account for the fact that the fee is only charged per car and not per individual in the car.  See Deposition of Rondi Fischer at 29 ("Q.  It didn't matter if you had a car with two, five, ten or whatever number. . . .  Is that correct?"  "A.  Correct.").  The court finds that a fee charged per car and not per passenger and that is not charged to those arriving on foot or by bicycle is a parking fee and not a general entrance fee.

Having determined that the $3.00 fee was purely a parking fee and not a general entrance fee, the inquiry is then whether this equates to a "charge" under the RUS.  West Virginia has not addressed the question of parking fees in relation to the liability exclusion under its RUS.  Most jurisdictions that have addressed this issue, however, have held that a parking fee does not invoke the "charge" exception to that state's respective RUS liability exclusion.  See Hall v. United States, 2003 WL 1877593, 2:02cv00096, at n.2 (W.D. Va. 2003) (noting that the case could be dismissed for lack of subject matter jurisdiction under Virginia's RUS because the $3.00 fee "was charged 'per vehicle' and visitors who hiked to the area were not required to pay the fee [thus] the fee was not 'for use of the premises'"); Cole v. South Carolina Electric & Gas, Inc., 362 S.C. 445, 449-51 (holding that a $3.00 parking fee was not a "charge", defined as "the admission price or fee asked in return for invitation or

6

permission to enter or go upon the land"); Hanley, et al. v. State, 837 A.2d 707, 714 (R.I. 2003) (holding that camping and parking fees were not a "charge", defined as "the admission price or fee asked in returned for invitation or permission to enter or go upon the land"); Majeske v. Jekyll Island State Park Authority, 209 Ga. App. 118, 119-20 (holding that a $1.00 parking fee charged per vehicle was not a "charge," defined in the RUS as "the admission price or fee asked in return for invitation or permission to enter or go upon the land").

In a case analogous to the situation here, the Kentucky Court of Appeals held that a $2.00 parking fee levied per car and not per motorist was not a "charge" within the meaning of that state's RUS. See City of Louisville v. Silcox, 977 S.W.2d 254, 257 (Ky. App. 1998). The statute in that case defined "charge" as "the admission price or fee asked in return for invitation or permission to enter or go upon the land." Id. at 256 (citing Ky. Rev. Stat. § 411.190(1))(d)) compare with W. Va. Code Ann. § 19-25-5 (defining "charge" as "the amount of money asked in return for an invitation to enter or go upon the land"). That court stated that when a fee is "levied per vehicle without regard for the number of people inside and no fee is charged to those entering by other means . . . mere payment of a per-vehicle fee to enter and park . . . does not destroy the immunity granted by the statute." Id. at 256. As in Silcox, the $3.00 fee in this case was charged per vehicle irrespective of the number of passengers and it was the policy of the park that those arriving

7

by means other than a motorized vehicle were not charged any fee. <u>See</u> Deposition of Rondi Fischer at 29, 33.  This court agrees with the other courts that have held that a parking fee is not the equivalent of an entrance fee as contemplated by the term "charge" as defined in the various RUS's.  No reason is perceived why West Virginia's highest court, if asked to decide this issue, would not follow the great weight of authority from other jurisdictions.

    The plaintiff argues that the facts of this case are different from the other parking fee cases because the United States Forest Service designates Lake Sherwood as a "charge" area.  <u>See</u> Doc. No. 37 at 13-14.  The court finds this argument unavailing.  The definition of "charge" for purposes of West Virginia's RUS is a legal determination.  The statute defines "charge" internally.  As noted above, numerous states that have addressed RUS with nearly identical definitions of "charge" have determined that the definition does not encompass per-vehicle parking fees.  <u>See</u> <u>supra</u> at 7-8.  On the other hand, there is no evidence that the United States Forest Service was using the phrase "charge area" in relation to the RUS.  Nothing in the literature that designates Lake Sherwood as a "charge area" mentions any RUS.  <u>See</u> Deposition of Jim Miller, Ex. 2. Therefore, this court finds plaintiff's argument unpersuasive.

    Plaintiff also suggests that West Virginia has a more liberal interpretation of "charge" than the states that have addressed parking fees in relation to RUS.  <u>See</u> Doc. No. 37 at

14-15.  Plaintiff's reliance on Kessner v. Trenton, 158 W. Va. 992 (1975), is unconvincing.  Kessner involved a lawsuit over drowning deaths at a marina in which the owner of a marina and boat dock did not directly charge users a fee to swim in the lake but did operate related for-profit businesses at the marina.  See Kessner, 158 W. Va. At 999-1000 (noting that the defendants offered rental slips for boats and both rented and sold boats to the public).

The court in Kessner did not hold that any money that exchanged hands constituted a "charge" under the statute.  Rather, the court placed emphasis on the "money-making" aspect of the venture and the expectation that inviting people to the marina free of charge would increase sales and profit at the for-profit businesses.  Id. at 1004-05.  In fact, the court noted that the plaintiff was in line at the boat rental stand at the time the injury occurred.  Id.  The West Virginia Supreme Court reasoned that the increased sales and rentals the defendant would enjoy by allowing people to swim free of charge was a sufficient "charge" to remove the liability protection afforded by the RUS. Id.  Here, there was no similar profit motive or marketing strategy to increase sales at the park.  The facts of this case are more aligned with those cases on parking fees than with the facts of Kessner.  This court believes that the court in Kessner was swayed by the profit-making aspect of the marina and the relationship that the free swimming had in potentially increasing sales in the other aspects of the venture in that case.  As that

9

relationship is not present in this case, this court finds plaintiff's comparison to <u>Kessner</u> unconvincing. Accordingly, this court finds that the charge exception to the liability immunity provision of West Virginia's RUS does not apply in this case.

### B.  Deliberate, Willful, or Malicious

The plaintiff also argues that the exception to the RUS for "deliberate, willful, or malicious infliction of injury" applies in this case. <u>See</u> Doc. No. 37.  The defendant argues in its motion for summary judgment, however, that the plaintiff failed to allege any deliberate, willful, or malicious action in the complaint.  <u>See</u> Doc. No. 33 at 15; <u>see also</u> Complaint.  The plaintiff asserts that the term "reckless," used in the complaint, is a synonym for deliberate, willful, or malicious. <u>See</u> Doc. No. 37 at 11-12 (asserting that reckless negligence can also be gross negligence which can encompass deliberate, wilful, or malicious infliction of injury).  This court questions whether the number of leaps of logic necessary to move from "reckless" to deliberate, willful, or malicious infliction of injury was sufficient to put the defendant on notice of this claim.  In the exercise of an abundance of caution, however, this court will construe the term "reckless" as asserting a theory of deliberate, willful, or malicious infliction of injury.  Nevertheless, this court finds that the defendant's conduct in this case does not rise to a level sufficient to trigger the deliberate, willful, or malicious exception from the liability exclusion.

This court has been unable to find any cases in which a court in West Virginia or within the Fourth Circuit Court of Appeals has defined "deliberate, willful, or malicious" as used in West Virginia's RUS. Black's Law Dictionary defines deliberate as "intentional; premeditated; fully considered." See Black's Law Dictionary, 8th Ed. (2004). Willful is defined as "voluntary and intentional, but not necessarily malicious"; and malicious injury is defined as "an injury resulting from a willful act committed with knowledge that it is likely to injure another or with reckless disregard of the consequences." Id. A commonality between all three words is some degree of intention and knowledge. West Virginia has defined "willful negligence" standing alone. In Stone v. Rudolph, 32 S.E.2d 742 (W. Va. 1945), the court stated that willful negligence does not require "that there should be ill will toward the person injured; but an entire absence of care for the safety of others, which exhibits indifference to the consequences . . . ." Stone, 32 S.E.2d at 748 (citing Todorobak v. McSurley, 148 S.E. 323 (W. Va. 1929)).

The plaintiff argues that this case is on all fours with Denham v. United States, 834 F.2d 518 (5th Cir. 1987). See Doc. No. 37 at 12-13. In Denham, the plaintiff was injured when he dove from knee-deep water into waist-deep water and hit his head on concrete anchors at a lake owned by the United States. Denham, 834 F.2d at 519. The Fifth Circuit Court of Appeals upheld the district court's finding that the United States' conduct fell outside of that conduct protected by the RUS in

11

Texas. Id. at 522-23. The court affirmed the finding of liability against the United States.

The plaintiff asserts that the reasoning in Denham would result in a finding that the willful, deliberate, or malicious exception to the liability exclusion applies in this case. This court disagrees. There are several important distinctions between the Denham case and the matter before this court. First, the Fifth Circuit placed great importance on the fact that the buoys attached to the anchors had become detached and the United States knew that the buoys had detached on more than one occasion. Id. Nevertheless, the United States left the unattached anchors in the swimming area. Id. at 522. Additionally, the amount of the anchor above the surface of the lake floor was significant. Id. (noting that the anchors would occasionally protrude above the water line). Moreover, the standard of care applied in Denham was lower than that required in West Virginia even though the statutory language is similar. The Fifth Circuit interpreted the deliberate, willful, or malicious injury" language in Texas's RUS to encompass gross negligence under Texas law. Id. at 521. West Virginia, however, has held that "[w]illful negligence is a greater degree of negligence than gross." See Stone 32 S.E.2d at 749 (citing Turk v. Norfolk & W. Railway Co., 84 S.E. 569, 570)). Therefore, West Virginia would interpret the statutory language "deliberate, willful, or malicious injury" as requiring a higher degree of negligence than do the Texas courts.

12

In contrast to the facts of Denham, there is no evidence in this case that the anchors were ever separated from the buoys. The presence of the buoys would alert a swimmer to the fact that something was holding them in place under the water. Moreover, the amount of anchor that was above the floor of the lake was only "six inches." See Deposition of James Miller at 8. Also, significantly, there is no evidence of any reports of injuries from the buoy and anchor system at Lake Sherwood that would put the defendant on notice of a danger presented by the system. See Deposition of Rondi Fischer at 27. This court finds that the evidence in this case does not demonstrate the type of knowledge of a danger and conscious disregard of that danger to constitute "deliberate, willful, or malicious infliction of injury." Accordingly, neither exception to the immunity provision in West Virginia's RUS applies.

### IV. Conclusion

The FTCA provides that the United States can be held liable to the same extent as a private individual. West Virginia's RUS provides an exclusion from liability for landowners that allow individuals to use their property for recreational purposes subject to two exceptions. Neither exception is applicable in this case. Therefore, West Virginia's RUS, in conjunction with the FTCA, shields the United States from liability in this matter. Accordingly, defendant's motion for summary judgment is GRANTED.

The Clerk is directed to mail copies of this Revised Memorandum Opinion and Order to all counsel of record and to post a copy on the district website for publication.

It is SO ORDERED this 28th day of September, 2005.

ENTER:

*David A. Faber*
David A. Faber
Chief Judge